UNITED STATES DISTRICT COURT
Southern District of New York

---------------------------------- x
IN RE AUSTRALIA AND NEW ZEALAND      :
BANKING GROUP LIMITED SECURITIES     :   Civil Action No.: 08-11278 (DLC)
LITIGATION                           :
---------------------------------- x

**DEFENDANTS' FURTHER SUBMISSION IN RESPONSE TO PLAINTIFF'S SUPPLEMENTAL SUBMISSIONS FILED PURSUANT TO 15 U.S.C. § 78U-4(C)(1)**

Defendants Australia and New Zealand Banking Group Limited ("ANZ"), Charles B. Goode, Michael R.P. Smith, Ian J. Macfarlane, and Peter R. Marriott respectfully submit this further submission in response to Plaintiff's supplemental submissions filed pursuant to 15 U.S.C. § 78u-4(c)(1).

## Background

On December 14, 2009, this Court dismissed Plaintiff's Revised Amended Complaint with prejudice for failure to allege securities fraud, ordered Plaintiff to file Proposed Findings of Fact and Conclusions of Law pursuant to 15 U.S.C. § 78u-4(c)(1), and ordered Defendants to file an Opposition, if any. (Dec. 14, 2009 Order.) After those submissions were filed, on February 9, 2010, this Court called for further submissions from both sides regarding the "serious concerns" raised in Defendants' Opposition. (Feb. 9, 2010 Order.) There, Defendants had drawn the Court's attention to a pivotal factual allegation in the Original Complaint that had no basis in fact:

> In March 2007, in a series of internal emails, executives of ANZ recognized that Opes was in financial difficulties and that as a result, ANZ's loans to Opes Prime would be in jeopardy. Nevertheless, no public disclosure was made by ANZ.

(Orig. Compl. ¶ 25; Opp'n 3-7.)

In response to Your Honor's request for additional briefing, Plaintiff has now submitted a Proposed Supplemental Findings of Fact and Conclusions of Law and a separate Response. These submissions do not alleviate the serious concerns Defendants identified in their Opposition. To the contrary, the Proposed Supplemental Findings of Fact include the belated admission that **the "March 2007 [] series of internal emails" do not exist**. (Proposed Supplemental Findings ¶ 9; Vianale Decl. ¶¶ 5-6.) Plaintiff's submissions provide no basis on which the Court could determine that the challenged emails allegation had factual support or that the pleadings were objectively reasonable.[1]

### The Supplemental Submissions do not Alleviate the Serious Concerns about the Original Complaint.

Plaintiff submits that the inclusion of the nonexistent "March 2007 [] series of internal emails" was an "honest mistake" by the draftsman of the Original Complaint, Kenneth Vianale, arising out of his having misread the words "March 7" from a certain June 2008 *Business Spectator* article. (Proposed Supplemental Findings ¶ 24; Vianale Decl. ¶ 6.) The article stated that:

> After the Opes collapse, ANZ managing director Mike Smith told *Business Spectator* that the bank was exiting the business of securities lending, but **emails** obtained by *Business Spectator* suggest this process was happening much earlier. **According to the emails, an Opes director, Julian Smith, was warning about the effect of ANZ's hurried exit from securities lending as early as March 7 (Opes went into administration on March 27).**

---

[1] Moreover, the Proposed Supplemental Findings of Fact are improperly argumentative, inaccurate, and illogical. For example, Plaintiff proposes two factual findings that chastise Defendants for not "refut[ing]" statements made in Mr. Vianale's declaration, even though the declaration was filed—without Court approval—five days *after* the Opposition had already been submitted. (*See* Proposed Supplemental Findings ¶¶ 24-25.) For the record, Defendants disagree with nearly all of the Proposed Supplemental Findings of Fact and Conclusions of Law. In the event that the Court would consider a point-by-point response helpful, Defendants will promptly supply one.

(Vianale Decl. Ex. A, at 1 ¶¶ 2-3) (emphasis added). Nothing in the article suggested that the "March 7" emails date back to 2007. Nothing in the article suggested that *any* of the events being covered were not current events. To the contrary, the article covered events known to have occurred in March 2008, and describes the "emails" in the same sentence as those 2008 events.[2] The text of the article reveals no reason why a reader would make an "inadvertent [] error" confusing ANZ and Opes Prime emails from March 7, 2008 with "March 2007 [] internal emails" among "executives of ANZ" only. (Vianale Decl. ¶¶ 5-6, Ex. A; Resp. 7.)[3] The text of the *pleading* reveals compelling reasons for its draftsman to substitute "March 2007" for March 7, 2008.[4]

This Court need not decide, however, whether the fictitious or backdated "March 2007 [] series of internal emails" was the result of an "honest mistake" or was "concocted."

---

[2]   The *Business Spectator* article also expressly refers to former Opes Prime director Anthony Blumberg's concerns on "Friday, 21 March 2008." (Vianale Decl. Ex A, at 3 ¶ 6.)

[3]   Plaintiff argues that "internal emails" actually meant internal and external emails that were "internal and confidential to the circle of people involved in the events and not for distribution to the public." (Resp. 7.) The Original Complaint could not reasonably have been read that way because the draftsman went so far as to identify "executives of ANZ," but nobody else, as the emailers. (Orig. Compl. ¶ 25.)

[4]   Specifically, "March 2007" served as the trigger date to begin the Class Period on March 2, 2007—the date of the first of fifteen alleged misstatements. (Orig. Compl. ¶¶ 1, 44-69.) The sole alleged misstatement after March 7, 2008 also came after Opes Prime had publicly filed for bankruptcy on March 27, 2008. (*See id.* ¶ 68.) There are additional reasons to doubt Mr. Vianale's account of the "inadvertent [] error" provided now. First, Mr. Vianale admits that both he and Plaintiff's counsel were on actual notice of this purported "error" no later than "April 2009," when "[D]efendants contested the allegation in paragraph 25" in mediation. (Vianale Decl. ¶ 22.) Defendants also repeatedly flagged this issue on the Motion To Dismiss. (*See* Mot. To Dismiss 4-6, Reply 20 n.13.) Nevertheless, Plaintiff said nothing about the alleged "error" until now. Second, Mr. Vianale's Declaration only states that the June 2008 *Business Spectator* article was in his "files" and that he "mistook" two words from the article—"March 7." (Vianale Decl. ¶ 6.) Nothing squarely states that any attorney from his firm actually *read* the article—let alone read it carefully—prior to filing the Original Complaint. (*See id.* ¶¶ 1-25.)

(Vianale Decl. ¶¶ 5-6.) "Rule 11 violations require[] only a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (discussing "objective unreasonableness" in the context of Rule 11(b)(3)) (internal quotation marks omitted); *see also Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400(NRB), 2008 WL 4386764, at *13 (S.D.N.Y. Sept. 24, 2008) ("It is clear that sanctions are appropriate where facts have been 'concocted.'") "[T]he mandate of the PSLRA obviates the need to find bad faith prior to the imposition of sanctions." *ATSI*, 579 F.3d at 152. "The PSLRA . . . does not in any way purport to alter the *substantive standards for finding a violation of Rule 11*, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found." *Id.* The PSLRA's stricter sanctions procedure was designed to reduce the "economic incentives" to bring "abusive" claims of securities fraud. *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 219-20 (2d Cir. 2002).[5]

Contrary to Plaintiff's Response, *Foster v. Wilson*, CV 04-9552 DSF (VBKx) (C.D. Cal. Mar. 10, 2008), is directly on point.[6] In their Initial Complaint, the *Foster* plaintiffs alleged an "incorrect and later date [of stock purchase which] 'permitted' them to allege numerous misrepresentations allegedly made before the sale to induce them to purchase stock." *Id.* at *8.

---

[5]   "The PSLRA sanctions provision forecloses the kind of safe harbor afforded in Rule 11(c)(2)." *ATSI*, 579 F.3d at 152. "By virtue of this statutory notice, consideration of sanctions in the PSLRA context . . . can never come as a surprise, because Congress, not the court, has prompted and *mandated* a Rule 11 finding." *Id.*

[6]   Plaintiff attempts to distinguish *Foster* on procedural grounds only. (*See* Resp. 5-6; Vianale Decl. ¶ 24.) In *Foster*, sanctions were awarded because the Initial Complaint was filed, not because defendants filed a motion to dismiss that the court ultimately granted. *See Foster*, CV 04-9552 DSF (VBKx), at *9 ("[I]t is precisely Plaintiffs' and Plaintiffs' counsel's substantial lack of diligence in failing to verify material facts *prior to the filing* of the Initial Complaint that is sanctionable.") (emphasis added).

Plaintiff now admits that—with respect to the "March 2007 [] series of internal emails"—"the error is with respect to the date, March 2007" (Vianale Decl. ¶¶ 5-6) and that based on this "error," Plaintiff pleaded fourteen alleged misstatements that it could otherwise have not alleged in the absence of the erroneous date. (*See* Orig. Compl. ¶¶ 25, 44-67.) Like the plaintiffs in *Foster*, Plaintiff corrected the false factual contention in the Amended Complaint and proceeded under a different theory of securities fraud. (*See* Am. Compl. ¶¶ 1-148; *Foster*, CV 04-9552 DSF (VBKx), at **2-5, 8.) Moreover, like the plaintiffs in *Foster*, Plaintiff contends that the "error" was due to an "honest mistake." (Vianale Decl. ¶ 6; *compare Foster*, CV 04-9552 DSF (VBKx), at *9) ("Plaintiffs repeatedly proclaim that they did not make 'a deliberate attempt' to mislead the Court, and their false allegations were merely 'understandable, and good faith, error.'") After conducting the PSLRA's mandatory inquiry under 15 U.S.C. § 78u-4(c)(1), the *Foster* court rejected plaintiffs' claim of "good faith [] error" and concluded that sanctions were appropriate under Rule 11(b)(3). *Id.* at **1-10. According to the court, "the Federal Rules do not require an intent to deceive as a prerequisite to sanctions under Rule 11(b)(3). Rather, it is precisely Plaintiffs' and Plaintiffs' counsel's substantial lack of diligence in failing to verify material facts prior to the filing of the Initial Complaint that is sanctionable." *Id.* at *9.[7]

---

[7]   Plaintiff also takes issue with Defendants' purported sole reliance on out-of-district authority for the proposition that sanctions may be awarded based on an initial complaint where an amended complaint has been filed. (*See* Resp. 5.) In Opposition, Defendants relied on *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400(NRB), 2008 WL 4386764, at **13-14 (S.D.N.Y. Sept. 24, 2008), a recent case from this district awarding sanctions pursuant to Rule 11(b)(3) based on a plaintiff having abandoned and contradicted allegations from an initial complaint in an amended pleading. (*See* Opp'n 4-5.) Defendants also relied on *Chien v. Skystar Bio Pharm. Co.*, 256 F.R.D. 67, 76-79 (D. Conn. 2009), a case from this circuit, where sanctions were awarded in a securities fraud action for both the original and amended complaints. (Opp'n 3-4.)

Plaintiff incorrectly relies on the Second Circuit's recent decision in *Kiobel* v. *Millson*, 592 F.3d 78 (2d. Cir. 2010), to argue that sanctions are not warranted here. (*See* Resp. 3-4.) The *Kiobel* court recently reaffirmed the position advocated by *Defendants* in their Opposition (at 4)—that "[a] statement of fact can give rise to the imposition of sanctions [under Rule 11(b)(3)] only when the '*particular* [factual] allegation is utterly lacking in support.'" *Kiobel*, 592 F.3d at 81 (emphasis added). The Second Circuit did not carve out a "good faith error" exception to the longstanding "utterly lacking in support" standard. Rather, in adopting the First Circuit's holding that "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement," the *Kiobel* court cited as support the Fourth Circuit's rule that "[Rule 11 sanctions] do[] not extend to isolated factual errors, committed in good faith, *so long as the pleading as a whole remains 'well grounded in fact.'*" *Id.* at 83 (emphasis added). The court then concluded that a good faith, "possible" overestimate in a witness statement was not actionable under Rule 11(b)(3) where it did not have "a material impact on the meaning of the statement." *Id.*

The "particular allegation" at issue in this case does not involve a "possible" overstatement or require "an overly literal reading" to determine its falsity. *See id.* It is undisputed that Plaintiff's allegation of a "March 2007 [] series of internal emails" is "literally false." (*Id.*; Proposed Supplemental Findings ¶ 9; Vianale Decl. ¶¶ 5-6.) The allegation is also utterly lacking in factual support. (*See supra* 2-3.)

Even if there were a "good faith error" exception where the pleading as a whole remains "well grounded in fact," this pleading would not qualify for the exception. The fictitious or backdated emails served as the *sole* basis for the claim that fourteen of the fifteen alleged misstatements in the Original Complaint were materially false and misleading. (Orig. Compl. ¶¶ 44-67; Opp'n 6.) The fifteenth alleged misstatement (Orig. Compl. ¶ 68) was nonactionable as

a matter of law under the "bespeaks caution" doctrine. (*See* Dec. 14, 2009 Opinion and Order 25, 35-37.)

Similarly, even if Plaintiff were correct that someone "could" have filed an initial pleading that did not violate Rule 11 (Resp. 1 n.1), Plaintiff's failure to conduct "an inquiry reasonable under the circumstances" prior to filing the Original Complaint remains sanctionable. *See* FED. R. CIV. P. 11(b); *Foster*, CV 04-9552 DSF (VBKx), at *9. The materials the draftsman reviewed or received post-filing cannot alter this Rule 11(b)(3) analysis.[8]

Plaintiff finally argues that sanctions should not be imposed because "Defendants were never required to respond to Paragraph 25." (Resp. 1; Vianale Decl. ¶ 24.) The amount of attorneys' fees incurred responding to the Original Complaint may bear on whether an award of attorneys' fees would be an "effective deterren[t]" for future sanctionable filings, *see* FED. R. CIV. P. 11(c)(4), but not on whether the pleading is sanctionable. *See Gurary*, 303 F.3d at 223. In any event, Defendants necessarily incurred reasonable attorneys' fees responding to the Original Complaint. These fees included, among other things, fees investigating the viability of Plaintiff's claims, preparing a mediation statement, and attending mediation. (*See* Apr. 1, 2009 Order Referring Case for Mediation.)

---

[8] Articles not read until April 2009 (*see* Vianale Decl. ¶ 22) and a Blumberg Declaration not received until February 2010 (*see id.* ¶ 23) certainly can have no bearing on whether the "March 2007" emails allegation was "utterly lacking in support" as of December 29, 2008, when the Original Complaint was filed. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). Contrary to Plaintiff's Proposed Supplemental Findings of Fact (¶¶ 6-7), the Opposition stated "[t]he Court may also determine that the Original Complaint was a 'strike suit' filed for an improper purpose in violation of Federal Rule of Civil Procedure 11(b)(1) and that its claims and legal contentions were frivolous in violation of Rule 11(b)(2)." (Opp'n 4 n.2.)

### The Supplemental Submissions do not Alleviate
### the Serious Concerns about the Revised Amended Complaint.

Plaintiff does not directly address the concerns with the Revised Amended Complaint. (*See* Proposed Supplemental Findings of Fact and Conclusions of Law.) Instead, Plaintiff's Response incorrectly argues that Defendants "overstate[]" the law by contending that there is a "blanket rule that prohibits basing a securities fraud claim on false statements related to a company's internal controls." (Resp. 12.) As set forth in the Opposition, Defendants argued that because "the Revised Amended Complaint . . . failed to set forth a single materially false or misleading statement or omission" and "[b]ecause the flaws *in the Complaint* were 'apparent' and the courts have 'routinely held' similar allegations 'nonactionable' (*see* [Dec. 14, 2009 Opinion and Order 27]), the pleading *may* be sanctionable under Federal Rule of Civil Procedure 11(b)(2). See Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995)." (Opp'n 7-8) (emphasis added).[9]

Plaintiff contends that *Varghese* v. *China Shenghuo Pharm. Holdings*, 2009 U.S. Dist. LEXIS 114819 (S.D.N.Y. Dec. 9, 2009), and *In re Dynex Capital, Inc.*, 2009 U.S. Dist. LEXIS 96527 (S.D.N.Y. Oct. 19, 2009), establish that "statements regarding a company's internal controls . . . are in fact actionable." (Resp. 13-15.) Defendants do not dispute that, at times, certain statements regarding a company's internal controls could be actionable under the securities laws. The question in this case is whether Plaintiff advocated a "frivolous legal position," *see*

---

[9]  Plaintiff also wrongly asserts that "Defendants have abandoned any contention that the Revised Amended Complaint's allegations of scienter, reliance, transaction causation, loss causation and damages were without basis or unwarranted by law." (Resp. 1, 12 n.4.) Defendants' Motion To Dismiss expressly argued that Plaintiff's scienter and loss causation allegations were without basis and unwarranted by law. (*See* Mot. To Dismiss 19-27; Reply 10-17.) Defendants elected not to burden the Court with additional briefing on these other pleading failures because the Court had already deemed it "unnecessary" to consider them in dismissing the Revised Amended Complaint with prejudice. (Dec. 14, 2009 Opinion and Order 19 n.10.)

*Morley*, 66 F.3d at 25, not whether a hypothetical plaintiff could ever have sufficiently alleged misstatements regarding internal controls. *See id.* Moreover, every claim need not be frivolous in order for the pleading to be sanctionable under Rule 11. *See Gurary*, 303 F.3d at 222.

Finally, it is incorrect that "the Court *decided* not to grant leave to amend after issuing an opinion and dismissing the Revised Amended Complaint." (Resp. 21) (emphasis added). In the words of this Court, "[P]laintiff has been offered a final opportunity to amend its pleading and has declined to make any further amendments." (Dec. 14, 2009 Opinion and Order 15 n.9; *see also* Oct. 20, 2009 Tr. at 2:10-3:2, 5:13-17.) Plaintiff cannot in good faith complain about its inability to amend a pleading to correct potentially sanctionable deficiencies after expressly waiving its right to do so.[10]

For the reasons set forth above and in Defendants' Opposition, Defendants respectfully request that this Court enter an order awarding Defendants the reasonable attorneys' fees and expenses incurred in connection with this litigation. *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii). In the event that the Court awards sanctions, Defendants would request the opportunity to detail the fees and expenses that arose out of these filings.

---

[10] For the same reasons, Plaintiff's attempt to distinguish Defendants' caselaw on the ground that leave to amend was granted is meritless. (Resp. 22.)

Dated:  New York, New York
        March 12, 2010

                                    Respectfully submitted,

                                    By: /s/ 
                                    Samuel W. Seymour (SS-7709)
                                    Penny Shane (PS-0185)
                                    Daniel R. Margolis (DM-2335)
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street
                                    New York, New York  10004
                                    Tel.:  (212) 558-4000
                                    Fax:  (212) 558-3588

-10-