UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :    08 Civ. 11278 (DLC)
IN RE AUSTRALIA AND NEW ZEALAND BANKING :
GROUP LIMITED SECURITIES LITIGATION     :    OPINION & ORDER
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiffs Levine and Legacy Solutions, Inc.:

Jules Brody
James Henry Glavin IV
Patrick Slyne
Stull Stull & Brody
6 East 45th Street
5th Floor
New York, NY 10017

Kenneth J. Vianale
Vianale & Vianale LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431

For Defendants:

Samuel W. Seymour
Penny Shane
Daniel R. Margolis
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

DENISE COTE, District Judge:

The Private Securities Litigation Reform Act of 1995
("PSLRA") requires, upon final adjudication of any securities
fraud lawsuit, that the court make specific findings regarding
compliance by each party and each attorney with Rule 11 of the
Federal Rules of Civil Procedure. The PSLRA further mandates

that if any violations of Rule 11 are found, sanctions are
mandatory.  For the following reasons, sanctions will be imposed
against plaintiff's counsel for a substantial violation of Rule
11 with respect to the original complaint filed in this action.

FINDINGS OF FACT

The factual background to this lawsuit was addressed in the
Opinion and Order of December 14, 2009, dismissing the suit for
failure to state a claim.  See In re Austl. & N.Z. Banking Group
Ltd. Sec. Litig., No. 08 Civ. 11278 (DLC), 2009 WL 4823923
(S.D.N.Y. Dec. 14, 2009) (the "December Opinion").  Familiarity
with the December Opinion is assumed, and only the facts
necessary to the PSLRA sanctions inquiry are described here.

On December 29, 2008, the original complaint in this action
(the "Original Complaint") was filed by an individual investor,
Linda Levine ("Levine" or "plaintiff"), on behalf of herself and
a purported class of persons who purchased American Depository
Receipts ("ADRs") of the corporate defendant over a seventeen
month period between March 2, 2007 and July 27, 2008 (the "Class
Period").[1]  Named as defendants in the Original Complaint were
Australia and New Zealand Banking Group Limited ("ANZ") and four
ANZ officers or directors: Michael Roger Pearson Smith, Charles
B. Goode, Ian J. Macfarlane, and Peter Marriot (collectively,

---

[1] The case was re-assigned to this Court on January 14, 2009.

the "Individual Defendants").  The twenty-four-page Original

Complaint alleged violations of Exchange Act § 10(b) and Rule

10b-5 by all defendants and violations of Exchange Act § 20(a)

by the Individual Defendants.  The Original Complaint was signed

by Jules Brody, an attorney for Stull, Stull & Brody, and also

identifies as attorneys for the plaintiff James Henry Glavin

("Glavin") of Stull Stull & Brody and Kenneth J. Vianale

("Vianale") of Vianale & Vianale LLP.

        The Original Complaint alleged that, throughout the Class

Period, defendants made a series of false and misleading

statements concerning ANZ's financial results, its projected

future performance, its commitment to delivering value to

shareholders, and the absence of any material threats to its

business.  The Original Complaint asserted that these statements

were false and misleading because they failed to disclose the

financial risk posed by ANZ's relationship with Opes Prime Group

Limited ("Opes Prime"), an Australian margin lending and stock

brokerage firm of whom ANZ was the largest secured creditor.

When Opes Prime went into receivership on March 27, 2008, it

owed ANZ approximately $650 million.  The Original Complaint

claimed that ANZ ultimately lost approximately $850 million in

"soured loans" to various companies in "the deteriorating

property market," including but not limited to Opes Prime.  The

Original Complaint explained that the plaintiff's allegations

about ANZ, made upon information and belief, were "based upon
her attorneys' investigation which included, among other things
. . . analysis of publicly-available news articles and reports."

In a section of the Original Complaint entitled "The False
and Misleading Statements," Levine asserted that fifteen public
statements by ANZ or the Individual Defendants were false and
misleading, fourteen of which were issued before Opus Prime
entered receivership.[2]  The Original Complaint explained that
each of those fourteen statements was deceptive for the reasons
set out in Paragraphs 25, 26, and/or 29 of the Original
Complaint.  Of these three paragraphs, however, the only one
that concerned ANZ's advance knowledge of Opes Prime's financial
difficulties was Paragraph 25.  That paragraph stated:

> In March 2007, in a series of internal emails,
> executives of ANZ recognized that Opes was in financial
> difficulties and that as a result, ANZ's loans to Opes
> Prime would be in jeopardy.  Nevertheless, no public
> disclosure was made by ANZ.

(Emphasis supplied.)  Thus, Paragraph 25 was the only basis
for alleging a contemporaneous inference of scienter with
respect to ANZ's knowledge of Opes Prime's financial

---

[2] The fifteenth and final statement, contained in Paragraph 68,
recited ANZ's assurance on March 28, 2008 -- after Opes Prime
had entered receivership -- that ANZ had a "diversified"
portfolio that was "sufficient to cover the amount outstanding
from Opes Prime."  The pleading's assertion that that statement
was false relied on essentially all of the prior factual
allegations in the Original Complaint.

troubles.[3]

By Order of March 12, 2009, the Court scheduled a conference on March 27 to consider any motions for the appointment of lead plaintiff and lead counsel pursuant to the PSLRA. See 15 U.S.C. § 78u-4(a)(3)(B). Also on March 12, a stipulation was executed between Levine and the defendants (the "March 12 Stipulation") providing, in pertinent part, that the time for the defendants to

---

[3] Indeed, for eight of the fifteen statements, the allegation in Paragraph 25 was the sole basis for asserting that the statement was, in any way, false or misleading. For another four statements, only two bases were asserted -- Paragraphs 25 and 26 -- with Paragraph 26 in no way supporting an inference of scienter about Opes Prime. For another three statements, only three bases were asserted -- Paragraphs 25, 26, and 29 -- with Paragraph 29 referring to misconduct at Opes Prime, but in no way suggesting that ANZ had any knowledge thereof. Paragraph 26 states, in its entirety:

> On August 30, 2007, ANZ issued a shareholder trading update. ANZ Chief Executive Officer Ian McFarlane stated in relevant parts: "ANZ is in good shape and well-positioned for the future. Assuming normal global markets, prospects for 2008 and beyond are good. Our foundation is now much stronger. There is a tangible reason why our customers should deal with us, why the community should trust and engage with us, why our people should invest their working lives in us, and why shareholders should invest in us."

Paragraph 29 states, in its entirety:

> According to ASIC investigator Richard Vandeloo, between December 2007 and February 2008, Opes Prime's chief executive, Laurie Emini, had instructed various Opes Prime staff to "make entries" in the accounts of high-net-worth clients so they could avoid margin calls.

answer, move or otherwise respond to the complaint . . .
is hereby extended until no less than sixty (60) days
following (i) the filing of a consolidated amended
complaint by such plaintiff as the Court may hereafter
appoint to serve as lead plaintiff, or (ii) the
receipt of written notice to all defendants from the
Court-appointed lead plaintiff that a consolidated
amended complaint will not be filed.

As of the March 27 conference, no additional lawsuit had

been filed in this District against ANZ regarding its

involvement with Opes Prime.  At the conference, Glavin and

Vianale appeared jointly on behalf of three proposed lead

plaintiffs -- Levine, Legacy Solutions Inc. ("Legacy"), and John

B. Ponte -- and moved for Stull Stull & Brody and Vianale &

Vianale LLP to be appointed as co-lead counsel.  At the

conference, the Court appointed Legacy as the sole lead

plaintiff, and since Legacy had an attorney-client relationship

with Stull Stull & Brody, that law firm was appointed as lead

counsel.[4]  The resulting April 1 Case Management Order also

provided that Legacy would file an amended complaint in this

action on or before May 21, 2009.

On May 21, Legacy filed its consolidated amended complaint

(the "Amended Complaint").  The Amended Complaint abandoned the

---

[4] At the conference, the Court explained that it would only
appoint one law firm as lead counsel, given that the lawsuit was
neither enormous nor particularly complex.  When Vianale
inquired whether the Court would have any difficulty with him
continuing to work on the case with lead counsel, the Court
explained that it did unless lead counsel was advising the Court
that it could not staff the case.

theory asserted in the Original Complaint and omitted the allegation contained in Paragraph 25.  It asserted § 10(b) and § 20(a) claims premised on the findings recited in a securities lending review that ANZ published in August 2008, in the aftermath of the failure of Opes Prime and another brokerage business, Primebroker Securities ("Primebroker").  Its core allegation was that ANZ had failed to disclose in its public statements from 2006 to 2008 that it had inadequate internal controls for its Equity Finance unit.  The Amended Complaint identified around two dozen false statements that were either general statements about the quality of ANZ's risk management practices and controls, statements about the performance of one ANZ division, or disclosures concerning ANZ's financial exposure to Opes Prime and Primebroker.  Instead of clearly identifying why each of these statements was false, the Amended Complaint relied largely on a single paragraph that listed twelve separate reasons for the statements' alleged falsity.  Those twelve reasons were essentially that ANZ's public statements were false because ANZ lacked appropriate internal controls, because it did not effectively address deficiencies that it had identified in its internal controls, and because its internal audits had given adverse ratings to a particular unit within ANZ.  December Opinion, 2009 WL 4823923, at *8.

Defendants thereafter moved to dismiss the Amended
Complaint on July 2, 2009, arguing that it failed to state a
§ 10(b) claim with respect to the elements of materiality,
scienter, and loss causation.  In accordance with the provisions
of the March 12 Stipulation, the defendants never answered,
moved, or otherwise responded to the Original Complaint, as they
were under no duty to do so.  Defendants' motion to dismiss was
granted by the December Opinion, which ruled that none of the
statements alleged to be false and misleading was sufficient to
serve as the basis for a § 10(b) claim.  Id. at *14-*15.  The
December Opinion did not reach the other putative flaws of the
Amended Complaint asserted by defendants with respect to
scienter and loss causation.

As instructed by the Court in an adjoining December 14
scheduling order, the lead plaintiff submitted its proposed
findings of fact and conclusions of law on January 22, 2010,
addressing the investigations undertaken prior to filing the
Amended Complaint and concluding that the Amended Complaint was
not sanctionable.  Defendants filed an opposition statement on
February 4 arguing that both the Original Complaint and the
Amended Complaint violated Rule 11(b).  Defendants' opposition
focuses, in particular, on the inclusion of Paragraph 25 in the
Original Complaint.  Based on the serious concerns raised by
defendants' opposition, on February 9, the Court directed an

additional round of briefing to enable the lead plaintiff to respond to defendants' submission (the "February 9 Order").

Thereafter, the lead plaintiff and lead counsel made several additional submissions. First, on February 9, Vianale submitted a declaration (the "Vianale Declaration") to explain how Paragraph 25 came to be included in the Original Complaint.[5] The Vianale Declaration explains that the source of Paragraph 25's allegation concerning March 2007 internal emails was a news article entitled "Did ANZ light the fuse?" published in an Australian periodical called Business Spectator on June 6, 2008 (the "June 2008 Article").[6]  The June 2008 Article referenced a

---

[5] The Vianale Declaration was filed sua sponte by the lead plaintiff a few hours before the February 9 Order was issued.

[6] The June 2008 Article stated, in pertinent part:

> It appears that relations between the Opes Prime directors and ANZ Bank had broken down well before the troubled broker went into administration because of ANZ's efforts to wind down its securities lending business.

> After the Opes collapse, ANZ managing director Mike Smith told Business Spectator that the bank was exiting the business of securities lending, but emails obtained by Business Spectator suggest this process was happening much earlier.

> According to the emails, an Opes director, Julian Smith, was warning about the effect of ANZ's hurried exit from securities lending as early as March 7 (Opes went into administration on March 27).

> Julian Smith warned that ANZ's pressure on Opes, as well as another of its securities lending clients,

series of emails between an Opes Prime director, Julian Smith,
and an ANZ director, Ben Steinberg, which the Article identifies
as having occurred on "Friday, March 7."[7]  The Vianale
Declaration explains that he "mistook the article's 'March 7'
reference as one to March 7, 2007, instead of March 7, 2008,
which is the correct reading."  Vianale thereby concedes that
the allegation in Paragraph 25 was false.  Vianale asserts,
however, that this mistake was "inadvertent, not intentional"
and "was not 'concocted' or made in bad faith, but was the
result of an honest mistake on [his] part."  Other than
asserting that he acted in good faith, Vianale does not explain

---

    Tricom, would cause "systemic risks to the entire
    stockmarket".

    Ben Steinberg, the director, corporate portfolio
    management at ANZ, wrote to Julian Smith and Opes
    managing director Laurie Emini on <u>Friday March 7</u>
    referring to a conference call the previous Wednesday,
    at which "milestones" had been agreed.

    . . . .

    Later that day Smith forwarded Steinberg's email to
    all the directors and senior employees of Opes . . . .

    It's clear from Julian Smith's email to his fellow
    directors that ANZ was putting a lot of pressure on
    Opes at the beginning of March -- more than was
    evident from that short email from Ben Steinberg.

(Emphasis supplied.)  The time and date "7:48 AM, 6 Jun 2008"
appears in the upper right-hand corner of the first page of the
June 2008 Article.

[7] In 2008, March 7 fell on a Friday, while in 2007, March 7 fell
on a Wednesday.

why he mistook the June 2008 Article to be referencing the year
2007, nor does he explain why this error was not caught prior to
filing the Original Complaint.[8]

On February 26, lead counsel submitted supplemental
proposed findings of fact and conclusions of law and a separate
response by the lead plaintiff to the defendants' February 4
submission, each of which reaffirmed the account contained in
the Vianale Declaration.  On March 12, defendants filed a
surreply continuing to oppose the plaintiff's proposed findings.

## CONCLUSIONS OF LAW

"The PSLRA mandates that, at the end of any private
securities action, the district court must 'include in the
record specific findings regarding compliance by each party and

---

[8] The Vianale Declaration states that, prior to filing the
Original Complaint, Vianale conferred with a forensic
accountant, Melvin Gavron.  Gavron produced a written report for
Vianale "detailing what [Gavron] described as inadequate public
disclosure of ANZ's loan exposure to two stockbrokerage firms,
Opes Prime and Primebroker Securities, rendering ANZ's reported
financial results false and misleading."  Vianale notes that he
"reviewed [Gavron's report] and relied upon it to continue [his]
investigation and to draft the original complaint."  Vianale
does not explain whether Gavron's report attempted to identify
when ANZ first learned of ANZ's difficulties, nor whether
Gavron's report included any references to March 2007 or to the
June 2008 Article.  Vianale also does not submit a copy of
Gavron's report with the Vianale Declaration.  In a separate
declaration, Gavron explains the nature of his investigation and
refers to several news articles upon which he relied in
producing his report for Vianale.  Gavron's declaration does not
identify the June 2008 Article as one of his sources, however,
or otherwise discuss that article in any way.

each attorney representing any party with each requirement of
Rule 11(b).'" Rombach v. Chang, 355 F.3d 164, 178 (2d Cir.
2004) (quoting 15 U.S.C. § 78u-4(c)(1)); see also ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 152 (2d Cir. 2009)
("ATSI").  "If the court makes a finding . . . that a party or
attorney violated any requirement of Rule 11(b) of the Federal
Rules of Civil Procedure as to any complaint . . . the court
shall impose sanctions on such party or attorney in accordance
with Rule 11 of the Federal Rules of Civil Procedure."  15
U.S.C. § 78u-4(c)(2).  "The express congressional purpose" of
this provision of the PSLRA is "to increase the frequency of
Rule 11 sanctions in the securities context, and thus tilt the
'balance' toward greater deterrence of frivolous securities
claims."  ATSI, 579 F.3d at 152; see also Gurary v. Nu-Tech Bio-
Med, Inc., 303 F.3d 212, 222 (2d Cir. 2002).  "The PSLRA does
not in any way purport to alter the substantive standards for
finding a violation of Rule 11, but functions merely to reduce
courts' discretion in choosing whether to conduct the Rule 11
inquiry at all and whether and how to sanction a party once a
violation is found."  ATSI, 579 F.3d at 152 (citation and
emphasis omitted).

## I.   Finding of Rule 11 Violation

Federal Rule of Civil Procedure 11(b) provides that an attorney who "present[s]" a pleading to the court thereby

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  Thus, under Rule 11, "an attorney has an affirmative duty to make 'reasonable inquiry into the facts and the law.'"  Perez v. Posse Comitatus, 373 F.3d 321, 324 (2d Cir. 2004) (quoting Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 542 (1991)).  "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers."  ATSI, 579 F.3d at 150 (citation omitted); see also id. at 152 ("[T]he mandate of the PSLRA obviates the need to find bad faith prior to the imposition of sanctions.").

Although the PSLRA reflects Congress's desire to "punish abusive litigation severely," Gurary, 303 F.3d at 222, the court's task must nevertheless be undertaken with great caution. "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." Kiobel v. Millson, 592 F.3d 78, 83 (2d Cir. 2010) (citation omitted); see also Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) (noting that a court must "ensure that any sanctions decision is made with restraint" (citation omitted)).

A.   The Original Complaint

Defendants assert that the inclusion of Paragraph 25 in the Original Complaint violates Rule 11(b)(3), which requires that all "factual contentions have evidentiary support." A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted). An erroneous statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" Kiobel, 592 F.3d at 81 (quoting Storey, 347 F.3d at 388). "Rule 11 neither penalizes

14

overstatement nor authorizes an overly literal reading of each factual statement." Id. at 83 (citation omitted). Moreover, "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim," and thus may make allegations based on information and belief. Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc., 271 F.3d 374, 386 (2d Cir. 2001). Nevertheless, "the creativity of an attorney may not transcend the facts of a given case." Levine v. Fed. Deposit Ins. Corp., 2 F.3d 476, 479 (2d Cir. 1993) (citation omitted).

The inclusion of Paragraph 25 in the Original Complaint was "objectively unreasonable" and therefore violated Rule 11(b)(3). Several considerations combine to make this conclusion unavoidable. First, whether read in isolation or in context within the Original Complaint, Paragraph 25 "is utterly lacking in support." Kiobel, 592 F.3d at 81 (citation omitted). Plaintiff can identify no evidence whatsoever for the allegation that internal emails were exchanged at ANZ in or about March 2007 concerning Opes Prime's financial difficulties. In their second round of submissions, lead counsel and Vianale both effectively concede that the March 2007 emails simply did not exist.

Second, the error in Paragraph 25 was not an isolated misstatement concerning a collateral or trivial fact, but

rather, a material allegation central to the viability of the entire pleading.  The start of the Class Period was fixed in the Original Complaint as March 2, 2007, a few days before the "internal emails" were putatively exchanged.  Aside from Paragraph 25, the Original Complaint makes no other allegation that ANZ was aware of Opes Prime's financial difficulties before March 2008, when Opes Prime entered receivership.  In other words, the Original Complaint's spurious allegation concerning the "March 2007 . . . series of internal emails" enabled plaintiff to begin the Class Period a full twelve months sooner than the plaintiff otherwise could have.  Most critically of all, without the allegation contained in Paragraph 25, there is no colorable basis whatsoever for alleging scienter by ANZ or the Individual Defendants with respect to fourteen of the fifteen alleged misstatements identified in the Original Complaint -- that is, all of the alleged misstatements that occurred before Opes Prime entered a receivership.

Finally, insofar as Vianale relies upon the June 2008 Article as the inspiration for the Original Complaint's allegation in Paragraph 25 concerning the March 2007 internal emails, plaintiff's misreading of that news article -- and subsequent lack of diligence or further inquiry -- was an act of gross negligence bordering on recklessness.  Given the centrality of Paragraph 25 to the Original Complaint's entire

theory of fraud, any reasonable inquiry into the factual basis
of the pleading would have prevented this mistake.  Such
indifference to the truth of the pleading's single most
important factual allegation -- coming, ironically, in the
context of initiating a lawsuit that accuses another party of
making reckless misstatements of material fact -- is the sort of
conduct that Rule 11 and the PSLRA seek to deter.

Lead counsel and Vianale advance several theories for why
the Original Complaint did not violate Rule 11, its serious flaw
notwithstanding.  First, plaintiff argues, relying on Kiobel,
that the Original Complaint was still "as a whole . . . well
grounded in fact."  Kiobel, 592 F.3d at 83 (citation omitted).
This contention is without merit.  As described above, Paragraph
25 was the crux of the entire complaint.

Second, Vianale asserts that alternative sources of support
were available for alleging scienter, maintaining that "[o]ther
news materials that [Vianale] retrieved and reviewed when
drafting the original complaint strongly suggest that ANZ was
aware of its exposure to Opes Prime early on, but did nothing to
disclose the risk to investors."  This, too, cannot save
Paragraph 25 from "utterly lacking in support."  Id. at 81
(citation omitted).  There is no support in these other news
materials for the proposition that ANZ knew of Opes Prime's

17

financial difficulties at any time in 2007, much less in March 2007.[9]

Third, lead counsel argues that "[t]he evidence presented demonstrates that the error was committed in good faith," and the lead plaintiff characterizes the Vianale Declaration as "candidly explain[ing] the inadvertent error made by Plaintiff's counsel."  While Vianale does take responsibility for the error, he does not explain how he came to rest his entire case on a misread news article, nor how he came to conclude that the June 2008 Article concerned events that occurred a year earlier than a natural reading of the article would indicate.  Given the centrality of the error at issue here, and in the absence of an

---

[9]  Vianale attaches two news articles as exhibits to his Declaration.  The earliest date as to which either of these news articles could provide a colorable inference of scienter is mid-to-late January 2008, or more than ten months after the "March 2007 . . . series of internal emails" were said to have been exchanged.  An excerpt from the most pertinent of the two articles states:

> The trouble with Opes Prime dates back to January 22[, 2008], so-called Black Tuesday, when the share market dived 7.5 per cent, creating havoc with margin lenders.  The first one to be publicly exposed was Tricom Equities, with its banks ANZ and Merrill Lynch swooping in.

> Confidential documents obtained by The Weekend Australian indicate that days after Black Tuesday, ANZ encouraged Tricom and Opes Prime to strike a deal that reduced Tricom's loan to ANZ and lifted Opes Prime's collateral.

(Emphasis supplied).

adequate explanation from Vianale, it would be difficult to excuse the error as a good-faith mistake.  Nevertheless, it is unnecessary to determine whether Vianale acted in good faith because counsel's reliance on a good-faith defense is misplaced.

Although the Second Circuit recently cited with approval a Fourth Circuit decision suggesting that a plaintiff could avoid sanctions for "isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact," that decision does not imply that good faith, without more, represents a complete defense to Rule 11 liability. Kiobel, 592 F.3d at 83 (quoting Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Ass'n, 831 F.2d 1238, 1245 (4th Cir. 1987)).  Since the 1993 Amendments to Rule 11 (which the Forrest Creek case predated), it has become well settled that good faith is not a defense to sanctions under most circumstances.[10]  "The standard for triggering the award of fees under Rule 11 is

_____

[10] One important exception exists to this general principle, but it is not applicable here.  In In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003), the Second Circuit held that the "objective unreasonableness" standard under Rule 11 does not apply where a court invokes Rule 11 sua sponte "long after [the attorney] had an opportunity to correct or withdraw the challenged submission."  Id. at 91.  The basis for this holding was the court's observation that "no 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding."  Id. at 89.  The Second Circuit has made clear, however, that the Pennie exception does not apply in the PSLRA context because "the statute itself puts litigants on notice that the court must (and therefore will) make Rule 11 findings at the conclusion of private litigations arising under the federal securities laws."  ATSI, 579 F.3d at 146-47.

objective unreasonableness, and is not based on the subjective

beliefs of the person making the statement." Storey, 347 F.3d

at 387 (citation omitted).  Rule 11 thus forbids counsel from

asserting an "empty-head-but-pure-heart defense" as

justification for frivolous legal or factual claims.  In re

Pennie, 323 F.3d at 99 (citing Fed. R. Civ. P. 11(b) Advisory

Committee's Notes to 1993 Amendments [hereinafter "Rule 11

Advisory Committee Notes"]).

Finally, plaintiff suggests that the Original Complaint did

not violate Rule 11 because (1) the defendants were never under

any duty to respond to the Original Complaint; (2) the

defendants did not respond to the Original Complaint; and (3)

the filing of the Amended Complaint, which abandoned the

erroneous allegation contained in Paragraph 25, effectively

cured the error by superseding the original pleading.  These

arguments are without merit.  A Rule 11 violation is complete

upon the "present[ation]" of an offensive pleading to the court,

not upon the opposing party's response thereto.  Fed. R. Civ. P.

11(b).  To be sure, an amended complaint in most respects

"renders the original complaint of no legal effect," such that

"[i]t is as though the original complaint was never served."

Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 260 (2d Cir.

2002).  The PSLRA makes plain, however, that the sanctions

inquiry applies to "any complaint, responsive pleading, or

dispositive motion."  15 U.S.C. § 78u-4(c)(1) (emphasis added).
Plaintiff's counsel have identified no authority for the
proposition that the filing of an amended complaint overwrites a
Rule 11 violation contained in an original pleading and thereby
prevents the imposition of sanctions under the PSLRA.[11]

It also cannot be ignored that the initial complaint is the
vehicle that invokes a court's jurisdiction and sets the
litigation in motion.  In this case, upon the filing of the
Original Complaint, the defendants were forced to retain counsel
and conduct an initial investigation into the allegations
contained in the Original Complaint in preparation for defending
the lawsuit, and later, for participating in court-ordered
mediation.  Cf. Retired Chi. Police Ass'n v. Firemen's Annuity &
Benefit Fund of Chi., 145 F.3d 929, 934 (7th Cir. 1998)
("Counsel may not drop papers into the hopper and insist that
the court or opposing counsel undertake bothersome factual and
legal investigation.  They must conduct a reasonable

---

[11] Lead plaintiff offers one inapposite case as support for the
proposition that a court should not find a Rule 11 violation
under the PSLRA for a factual claim that the plaintiff has
abandoned before the close of litigation.  See Morris v.
Wachovia Sec., Inc., 448 F.3d 268, 280 (4th Cir. 2006) (no Rule
11 violation for plaintiff's "hidden fees claim," which
plaintiff omitted from his second amended complaint, where such
claim had been based on a permissible inference drawn from an
apparent discrepancy in financial account statements).
Plaintiff also cites an unpublished disposition from the Ninth
Circuit which does not constitute precedent under that court's
rules and which, in any event, is also inapposite.

investigation of the facts necessary to support their claims."
(citation omitted)).

The fact that defendants did not have to respond to the
Original Complaint also ignores the very substantial likelihood
that ANZ would never have had to defend against a securities
fraud lawsuit at all had the Original Complaint not been filed.
No other complaint was ever filed against ANZ in the Southern
District of New York concerning its involvement with Opes Prime
or Primebroker.  With the filing of this action in December
2008, the PSLRA procedural requirements took effect, a lead
plaintiff was selected, lead counsel was appointed, and the
filing of a consolidated class action complaint was scheduled.[12]
Aware that the Original Complaint was entirely lacking in merit,
the lead plaintiff and lead counsel had essentially two options:
to promptly dismiss the litigation or to try to fashion some
alternative theory for the litigation.  They chose the latter,
cobbling together generalized allegations about a lack of
internal controls gleaned from ANZ's own after-the-fact report
on the Opes Prime debacle.  The Amended Complaint could not, and
did not, survive a motion to dismiss.  There is, therefore,
compelling evidence that ANZ would never have been faced with

---

[12] Aside from the joint application by Legacy, Levine, and a
third individual to serve as co-lead plaintiffs, no other party
expressed an interest in serving as lead plaintiff in this
action.

the allegations in the Amended Complaint but for the fact that
the Original Complaint had been filed.

B.    The Amended Complaint

    Defendants also independently seek sanctions with respect
to the Amended Complaint.  Defendants contend that the Amended
Complaint was frivolous insofar as its "claims, defenses, and
other legal contentions [were not] warranted by existing law or
a nonfrivolous argument for extending, modifying, or reversing
existing law or for establishing new law."  Fed. R. Civ. P.
11(b)(2).  Defendants argue that the alleged misstatements
identified by lead plaintiff in the Amended Complaint were
clearly inadequate to support a claim under Second Circuit case
law defining the element of "materiality" in the context of
securities fraud litigation.  In particular, defendants assert
that the alleged misstatements identified by plaintiffs were,
without any question, protected either by the "bespeaks caution"
doctrine or by the principle that generalized corporate optimism
or "puffery" cannot sustain a fraud claim.

    The Court cannot conclude that the lead plaintiff or lead
counsel violated Rule 11 with respect to the Amended Complaint.
To be sure, the Amended Complaint was not meritorious.  It did
not survive Rule 12(b)(6) motion practice, and the December
Opinion dismissing the lawsuit only reached the first of three

grounds for dismissal asserted by defendants.  Nevertheless, "[a] distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." Salovaara v. Eckert, 222 F.3d 19, 34 (2d Cir. 2000) (citation omitted).  Here, "[h]owever faulty, [lead plaintiff's] positions were not so untenable as a matter of law as to necessitate sanction."  Id. (citation omitted).  Moreover, in opposition to the motion to dismiss, the lead plaintiff made a "nonfrivolous argument for extending, modifying, or reversing existing law" insofar as it attempted to distinguish the key authorities relied upon by defendants and, ultimately, by the December Opinion as well.[13]  Fed. R. Civ. P. 11(b)(2); see also Kropelnicki, 290 F.3d at 131 ("Rule 11 is violated when it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." (citation omitted)).  Finally, unlike the Original Complaint, the Amended Complaint did not contain any baseless factual allegations.  Accordingly, the Amended Complaint did not violate Rule 11(b).

---

[13] These cases included, among others, ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187 (2d Cir. 2009), and Rombach, 355 F.3d 164.

II.   Substantiality of the Rule 11 Violation

The PSLRA dictates that "[i]f the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) . . . the court shall impose sanctions on such party or attorney in accordance with Rule 11." 15 U.S.C. § 78u-4(c)(2).  Thus, "if a Rule 11 violation is found, the statute requires courts to impose sanctions." ATSI, 579 F.3d at 152.  Having concluded that the Original Complaint violated Rule 11, the Court must now determine what sanction to impose.

The PSLRA closely guides a court's discretion in choosing what sanction to impose.  The PSLRA "establishes a presumption that, 'for substantial failure of any complaint to comply with any requirement' of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and costs." Gurary, 303 F.3d at 215 (quoting 15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis in original)).  The purpose of this presumption is to require courts to "make whole the victim of a Rule 11 violation" and not merely to "deter repetition of the sanctioned conduct." Id. at 220 (citation omitted).  Even if the failure is "substantial," however, the presumption of full attorneys' fees may be "rebutted . . . upon proof that 'the violation of [Rule 11(b)] was de minimis' or that  the sanctions 'will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a

25

greater burden on the party in whose favor sanctions are to be imposed.'"  Id. at 215 (quoting 15 U.S.C. § 78u-4(c)(3)(B)); see also ATSI, 579 F.3d at 154.  If either of those two exceptions applies, sanctions are still required, but "the district court 'shall' only impose those sanctions that it 'deems appropriate' pursuant to Rule 11."  Gurary, 303 F.3d at 226 n.6 (quoting 15 U.S.C. § 78u-4(c)(3)(C)).  Thus, before imposing sanctions, it must be determined whether plaintiff's violation of Rule 11(b)(3) was "substantial," and if so, whether the presumption of full attorney's fees has been rebutted by either of the two § 78u-4(c)(3)(B) factors.

In Gurary, the Court of Appeals defined what constitutes a "substantial violation" within the meaning of the PSLRA.  The case concerned a circumstance in which a plaintiff's complaint contained a mix of frivolous (sanctionable) and nonfrivolous claims.  The court, concluding that the "presence of nonfrivolous claims" alone did not necessarily defeat a finding of substantiality, id. at 221, held that "a substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive."  Id. at 222. Thus, in determining whether a "substantial violation" exists, a court must consider the relative weight of the frivolous and

nonfrivolous elements.[14]  The Court of Appeals summarized the
inquiry to be undertaken as follows:

> [I]n cases of this sort, the district court must first
> determine whether frivolous claims in violation of
> Rule 11 have been brought.  If they have, the court
> must examine whether <u>nonfrivolous claims</u> have been
> joined and, if so, whether these claims -- whatever
> their number -- are of a quality <u>sufficient to make
> the suit as a whole nonabusive</u> and the Rule 11
> violation not substantial.  If no such weighty
> nonfrivolous claims are attached, the statutory
> presumption applies.  The court must then determine
> <u>whether the violation was de minimis</u>, for, if it was,
> the presumption is rebutted.  Alternatively, financial
> statements or other relevant evidence may establish
> that the full sanction award unjustly creates an
> unreasonable burden on the sanctioned party and that a
> partial award would not "impose a greater burden on
> the party in whose favor sanctions are to be imposed."

<u>Id.</u> at 223 (emphasis supplied) (quoting 15 U.S.C. § 78u-
4(c)(3)(B)(i)).  The Court of Appeals further stated that if the
nonfrivolous claims are sufficiently significant as to cause the
Rule 11 violation not to be substantial, "partial sanctions
might still be assessable under ordinary Rule 11 standards to
punish not the bringing of the whole suit, but only of the
frivolous claim."  <u>Id.</u> at 222; <u>see also</u> <u>Morris</u>, 448 F.3d at 284
(reaching the same conclusion).

    The violation of Rule 11(b)(3) in the Original Complaint
was "substantial."  The factual error contained in Paragraph 25

---

[14] <u>Gurary</u> strongly implies the court's analysis of the mix of
frivolous and nonfrivolous claims is relevant to the step-one
inquiry -- whether a Rule 11 violation is substantial -- but not
the step-two inquiry, which is whether the mandatory presumption
of full attorney's fees has been rebutted.  <u>See id.</u> at 222.

was the cornerstone of plaintiff's theory of the case and thereby "infected the entire pleading." Rule 11 Advisory Committee Notes. There were no other nonfrivolous claims in the Original Complaint.

Even if it was appropriate to consider the claims in the Amended Complaint -- and it is not clear that they should be considered -- this would not alter the conclusion that the violation was substantial.[15] The Amended Complaint was not "of a quality sufficient to make the suit as a whole nonabusive." Gurary, 303 F.3d at 223. To borrow the language of Gurary, the Amended Complaint less resembled a legitimate filing that had the potential of prevailing and more resembled a claim that patently lacked merit and only narrowly avoided being deemed frivolous itself.[16] Id. at 222. In other words, the Amended

---

[15] Gurary concerned the presence of nonfrivolous and frivolous claims joined together in the same complaint, whereas this case concerns the presence of a grossly mistaken factual assertion in one complaint followed by nonfrivolous claims in an amended complaint.

[16] Gurary further explained, in pertinent dicta:

> [W]e do not need to decide precisely how strong the nonfrivolous counts or arguments must be in order to limit sanctions only to the frivolous portions of the complaint. It may be that the presence of claims that survive summary judgment is sufficient. It may be that more is needed. But less may also be enough when, as in Simon DeBartolo [Group v. Richard E. Jacobs Group, Inc., 186 F.3d 157 (2d Cir. 1999)], the only nonfrivolous claim was a question of law, and so

Complaint's claims were "insufficiently meritorious to save the [lawsuit] as a whole from being abusive." Id. Because plaintiff's Rule 11 violation was substantial within the meaning of the PSLRA, a statutory presumption arises that the defendants should be awarded their reasonable attorney's fees and costs for the entire action.

A final step, however, remains. The statutory presumption may be rebutted by a finding under 15 U.S.C. § 78u-4(c)(3)(B) that the violation was "de minimis" or that an award of full attorneys' fees would "impose an unreasonable burden," "would be unjust," and "the failure to make such an award would not impose a greater burden on the [prevailing] party."

The de minimis exception is not defined by the PSLRA, and the Second Circuit has also not explained its scope. In Gurary, the majority concluded that "de minimis . . . must signify something other than just the opposite of 'substantial,'" Gurary, 303 F.3d at 223 n.3, because otherwise the exception would be rendered without force or purpose. The Gurary majority suggested that de minimis "might . . . refer to a minor Rule 11-violative procedural flaw in a suit that, though not in itself

---

summary judgment was appropriate, but that claim was deemed to be a novel and plausible one.

Gurary, 303 F.3d at 224. In contrast with the circumstances contemplated in dicta by the Gurary court, in this lawsuit, the entire Amended Complaint was dismissed for failure to state a claim.

otherwise abusive, has no saving merit" or to a suit in which only one of twenty counts contained in a complaint violate Rule 11.[17]  Id.  The Gurary majority also cautioned that "one should not exclude the possibility that the seeming tension between substantial and de minimis is just the result of a drafting glitch that occurred because the de minimis defense had to be included for use in cases involving § 78u-4(c)(3)(A)(i)."  Id. at 223 n.3.  Whatever the definition applied, plaintiff's violation in this case is "manifestly not de minimis."  Id. at 224.

Unlike the other factors to be considered under the PSLRA, the "unreasonable burden" exception does not concern the existence of mitigating factors or nonfrivolous claims within the offensive pleading.  The Second Circuit in Gurary explained the "unreasonable burden" exception as follows:

> [B]oth the ordinary meaning of "unreasonable burden"
> and its context in the PSLRA indicate that the
> statute's unreasonable burden prong requires the
> sanctioned party to offer, through financial
> statements or other proof, evidence that the award is
> unreasonable and unjust, given the party's economic or
> other like status.  Thus, the district court is
> required to compare the burden on the sanctioned party

---

[17] Judge Walker suggested, alternatively, in his concurrence that the de minimis exception be interpreted to apply in situations where "the equities must weigh very heavily in favor of the party or attorney against whom sanctions are sought," or in other words, "the sanctionable party's misconduct must pale in significance or culpability in light of the other party's." Gurary, 303 F.3d at 230 (Walker, J., concurring).

        to the burden placed on the victim of the litigation,
        given the victim's financial or similar status.

Id. at 221.  The burden of raising this exception, and of
proffering evidence to prove that it is applicable, falls on the
party being sanctioned.  Id.  That party may not rely on
conclusory assertions of hardship, but rather, must "offer some
financial or other like statements, reflecting the claimed . . .
consequences of imposing the sanctions award, if that is to be
the basis of his rebuttal."  Id. at 225.

      Neither party has addressed the "unreasonable burden"
exception in its briefing on the sanctions issue.  Out of
fairness to the parties to be sanctioned, the parties will be
given an opportunity to address this question.  Consequently, as
set forth in the order accompanying this Opinion, both parties
may submit, at their discretion, evidence or further argument
concerning whether the statutory presumption of full attorney's
fees has been rebutted under the "unreasonable burden"
exception.

### III. Persons Subject to Sanctions

      Finally, it must be determined who should be held
responsible for the identified Rule 11(b)(3) violation.  Rule
11(c) provides that "the court may impose an appropriate
sanction on any attorney, law firm, or party that violated [Rule
11(b)] or is responsible for the violation."  Any party who

"present[s]" a pleading to the Court, "whether by signing,
filing, submitting, or later advocating it," may be held liable
for a violation contained therein.  Fed. R. Civ. P. 11(b); see
also Kiobel, 592 F.3d at 87 ("'The person signing, filing,
submitting, or advocating a document has a nondelegable
responsibility to the court, and in most [situations] should be
sanctioned for a violation.'" (quoting Rule 11 Advisory
Committee Notes)).  Rule 11(c) further mandates that "[a]bsent
exceptional circumstances, a law firm must be held jointly
responsible for a violation committed by its partner, associate,
or employee."  Where multiple parties or attorneys are
responsible for Rule 11 violations, those parties may be held
jointly and severally liable in the court's discretion.  See
Estate of Calloway v. Marvel Entm't Group, 9 F.3d 237, 239 (2d
Cir. 1993) ("[P]ersons liable for Rule 11 sanctions may be
jointly and severally liable"); see also In re Kunstler, 914
F.2d 505, 525 (4th Cir. 1990) (two attorneys who signed a
complaint violating Rule 11 held jointly and severally liable).

     Applying these principles, the following attorneys will be
held jointly and severally liable for sanctions: Kenneth J.
Vianale, who acknowledges having caused the error in Paragraph
25 and whose name appears in typewritten form on the Original
Complaint, and Jules Brody, the attorney who actually signed the

Original Complaint.[18]  In addition, both attorneys' firms --
Vianale & Vianale LLP and Stull, Stull & Brody -- shall be held
jointly responsible for their respective attorneys' violations,
as mandated by Rule 11(c).

CONCLUSION

For the foregoing reasons, sanctions are imposed against
Jules Brody, Kenneth Vianale, Stull, Stull & Brody, and Vianale
& Vianale LLP pursuant to Rule 11(b)(3) and 15 U.S.C. § 78u-
4(c)(2).  Defendants are entitled to their full attorney's fees
and costs under 15 U.S.C. § 78u-4(c)(3)(A)(ii) unless it may be
shown that such an award represents an "unreasonable burden"
pursuant to 15 U.S.C. § 78u-4(c)(3)(B)(i).  A separate order to
schedule further submissions by the parties accompanies this
Opinion.

SO ORDERED:

Dated:    New York, New York
          May 11, 2010

_____
DENISE COTE
United States District Judge

---

[18] Although Mr. Vianale concedes that the March 2007 "internal
emails" allegation was his brainchild, Mr. Brody also failed to
conduct an "inquiry reasonable under the circumstances" as
required when presenting a pleading.  Fed. R. Civ. P. 11(b).